ELBO COALS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Elbo Coals, Inc. v. Commissioner
Docket No. 1136-84.
United States Tax Court
T.C. Memo 1987-2; 1987 Tax Ct. Memo LEXIS 2; 52 T.C.M. (CCH) 1275; T.C.M. (RIA) 87002; January 5, 1987. D. Randall Gibson, for the petitioner. Aubrey C. Brown, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency in petitioner's income tax of $480,000 for *3 the fiscal year ended June 30, 1979.The issues for decision are: (1) whether petitioner is entitled to use section 1341[1] to compute its tax liability for 1979; and (2) if so, whether section 1341 applies to all or just a portion of a payment in the amount of $1,000,000 made by petitioner in 1979. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and exhibits attached thereto are incorporated herein by reference. Petitioner, Elbo Coals, Inc., is a Kentucky corporation, with its principal place of business being located in Pikeville, Kentucky at the time the petition in this case was filed and at all other relevant times. Call and Ramsey Coal Company ("C & R") is also a Kentucky corporation which during the 1970's, was engaged in mining coal. In September 1972, C & R and a third corporation, Fern Coal, Inc. ("Fern") entered into an informal (oral) agreement under which Fern was to mine coal on properly leased by C & R and *4 deliver such coal to C & R's tipple. [2]C & R was to sell the coal and pay Fern 80 percent of the sales price. C & R had similar agreements with other mining companies. In July 1973, Lano Corporation ("Lano") purchased all of the outstanding stock of C & R. In the stock purchase agreement, the former stockholders of C & R agreed to indemnify and hold Lano harmless from the breach of any warranty contained in the agreement, including a warranty that C & R had complied with its informal contract with Fern. The indemnity inured to the benefit of Lano's successors and was purportedly secured by a $350,000 escrow fund. On January 1, 1974, petitioner and C & R entered into an agreement under which petitioner took over the operation of C & R's tipple and other facilities for one year in return for the payment of $1,000,000 by petitioner to C & R. Pursuant to this agreement, petitioner became responsible for all aspects of C & R's operation, including paying mining companies such as Fern for coal mined and delivered to the tipple. During the period from January 1, 1974 through May 31, 1974, petitioner sold the coal delivered to the tipple *5 by Fern and paid Fern for such coal. Petitioner, however, never entered into any agreements with Fern or the other mining companies. In June 1974, petitioner purchased from Lano all of the stock of C & R for $4,000,000. The stock purchase agreement provided that Lano would indemnify petitioner for the breach of any warranty in the agreement. However, indemnification was limited in this agreement to the breach of written contracts. The indemnity was to expire on June 11, 1977. After C & R's stock was bought by petitioner, C & R resumed its mining operations as a wholly-owned subsidiary of petitioner. Fern continued to deliver coal to the tipple until it mined out the area on which it was working in April 1975. For the fiscal years ended June 30, 1974 and June 30, 1975, petitioner filed consolidated income tax returns. C & R became a member of the consolidated group as of June 1, 1974. On these consolidated returns, the gross receipts from the sale of coal by petitioner from January 1974 through May 1974 and from the sale of coal by C & R from June 1974 through June 1975 were reported; and all payments made to Fern and others by petitioner and C & R for coal delivered to *6 the tipple plus any other expenses incurred in producing the coal were included in cost of goods sold. In July 1975, Fern filed a lawsuit in a local court against C & R, in which it was alleged that C & R had underpaid Fern for the coal mined by Fern on C & R leases during the period from September 1972 to April 1975. In its answer, C & R denied any liability. In May 1977, while the lawsuit was still pending, petitioner sold 63 percent of its C & R stock to Kentucky Coal and Land Company ("KCL") for $4,100,000. In consideration for the stock, KCL agreed to pay a bank loan of petitioner's in the amount of $600,000 and to pay the balance of the purchase price over a period not exceeding seven years. As part of the stock sale, petitioner agreed to "Indemnify and hold [KCL] and C & R harmless from any and all loss, liability, damage or expense (including reasonable counsel fees) arising from or relating to" the lawsuit brought by Fern against C & R. After the stock sale to KCL, petitioner filed a motion for leave to intervene in the Fern lawsuit. As grounds for its motion, which was later granted, petitioner, stated that it would be required to reimburse KCL or C & R for any *7 loss resulting from the litigation and that intervention was necessary to protect any indemnity claims petitioner had against the former stockholders of C & R. Petitioner subsequently filed a complaint against the original stockholders of C & R, but this claim was never pursued. In September 1978, Fern received a jury verdict for $1,877,211.89 in its lawsuit against C & R. According to evidence presented at the trial and accepted by the jury, Fern had been underpaid $23,160.36 for the period before January 1, 1974, during which C & R had operated the tipple; $637,379.15 for the period between January 1 and June 1, 1974, when petitioner operated the tipple; and $1,216,672.38 for the period after June 1, 1974, when C & R resumed operations. On October 8, 1978, a judgment was entered against C & R in the amount of the verdict. Thereafter petitioner and C & R filed motions for a new trial and for judgment notwithstanding the verdict. Upon denial of the motions, both C & R and petitioner filed notices of appeal. On January 2, 1979, the matter was settled and C & R paid Fern $1,000,000 in full satisfaction of its claim. On March 29, 1979, petitioner sold its remaining 32 percent *8 of the stock in C & R to KCL. The purchase agreement for this stock provided that petitioner was to receive a total of $3,000,000 for the remaining stock in C & R and the outstanding balance due from KCL on the initial purchase less the $1,000,000 paid by C & R to Fern in satisfaction of the judgment. KCL agreed that the above credit for $1,000,000 was in full satisfaction of petitioner's liability under the indemnity provision of the May 1977 agreement. The March 1979 agreement noted that the Fern judgment "has been settled and compromised for the sum of $1,000,000 which has been paid to the said Fern Coal Company by C & R with the understanding that said $1,000,000 could be recouped from [petitioner] under the above indemnifying provision of said agreement of May 7, 1977." On its return for fiscal year 1979, petitioner treated the payment as an ordinary deduction from gross income under section 162(a). In June 1980, petitioner filed an application for a tentative refund of income tax in the amount of $480,000 for fiscal year 1979. Petitioner arrived at the refund by treating the $1,000,000 payment as additional cost of goods sold for the years ended June 30, 1974 and 1975, *9 which resulted in tax decreases for those years and an overpayment of $480,000 in 1979 under section 1341. Respondent tentatively allowed and paid the refund in September 1980. In the deficiency notice dated October 20, 1983, respondent determined that the payment by C & R of the $1,000,000 to Fern did not qualify petitioner for the special tax computation provided by section 1341.Hence, the tentative refund could not be approved; as a result, there was a deficiency in petitioner's income tax for 1979 in the amount of $480,000. OPINION Section 1341[3] is applicable to a situation provided the following requirements are met: (1) an item was included in a taxpayer's gross income for a prior taxable year because the taxpayer had the appearance of an unrestricted right to the item at the close of that year; (2) a deduction exceeding $3,000 is allowable in the current taxable year because it was established after the close of the prior taxable year that the taxpayer did not have an unrestricted right to such item; and (3) section 1341(b)(2) does not apply. The result of an application *10 of section 1341 is that the tax for the current year is reduced by either the tax attributable to the allowable deduction in the current year or the decrease in the tax for the prior year which is attributable to removal of the item, whichever is greater. Van Cleave v. United States,718 F.2d 193, 195 (6th Cir. 1983). The purpose of section 1341 is to mitigate the sometimes harsh result of the "claim of right" doctrine requiring a taxpayer to include an item in gross income in the year received even though the taxpayer is subsequently required to restore the item. Van Cleave v. United States,718 F.2d at 195; North American Oil Consolidated v. Burnet,286 U.S. 417, 424 (1932). *11 Petitioner, as noted above, must show, among other things, that it has a 1979 deduction because after the close of 1974 and 1975 it was established that petitioner did not have an unrestricted right to retain the funds claimed by Fern. This condition, however, is not met for two reasons. First, petitioner cannot show the requisite nexus between its 1979 deduction and a claim against petitioner for the withheld funds. Any deduction that petitioner might have for 1979 would arise out of the indemnity since petitioner's payment was in satisfaction of the indemnity. [4] In other words, petitioner made the payment because it was obligated to do so under the indemnity, not because there was a claim against it for the funds. Second, it was not established that petitioner did not have a right to the withheld funds. Petitioner must show at least a valid adverse claim to the funds, Pike v. Commissioner,44 T.C. 787, 799 (1965), *12 but there was no such claim. Fern did not have a claim against petitioner since there was no contractual relationship between those parties. Furthermore, any claim that C & R had against petitioner was attributable solely to the indemnity because, although petitioner did operate the tipple during a period when Fern was underpaid, there is no clear evidence in the record that petitioner paid Fern any less during such period then it was obligated to pay under the agreement between petitioner and C & R. [5] Thus, petitioner was never obligated to restore the funds to Fern or to C & R. We conclude, therefore, that petitioner is not entitled to use the recomputation provided by section 1341 for the taxable year ended June 30, 1979. [6]
Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
2. A tipple is a coal-screening plant.↩
3. Section 1341 reads in part as follows: SEC. 1341. COMPUTATION OF TAX WHERE TAXPAYER RESTORES SUBSTANTIAL AMOUNT HELD UNDER CLAIM OF RIGHT. (a) General Rule. -- If (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item; (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and (3) the amount of such deduction exceeds $3,000, then the tax imposed by this chapter for the taxable year shall be the lesser of the following: (4) the tax for the taxable year computed with such deduction; or (5) an amount equal to -- (A) the tax for the taxable year computed without such deduction, minus (B) the decrease in tax under this chapter (or the corresponding provisions of prior revenues laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years). * * * (b) Special Rules. -- (1) If the decrease in tax ascertained under subsection (a)(5)(B) exceeds the tax imposed by this chapter for the taxable year (computed without the deduction) such excess shall be considered to be a payment of tax on the last day prescribed by law for the payment of tax for the taxable year, and shall be refunded or credited in the same manner as if it were an overpayment for such taxable year. (2) Subsection (a) does not apply to any deduction allowable with respect to any item which was included in gross income by reason of the sale or other disposition of stock in trade of the taxpayer (or other property of a kind which would properly have been included in the inventory of the taxpayer if on hand at the close of the prior taxable year) or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. This paragraph shall not apply if the deduction arises out of refunds or repayments with respect to rates made by a regulated public utility (as defined in section 7701(a)(33) without regard to the limitation contained in the last two sentences thereof) if such refunds or repayments are required to be made by the Government, political subdivision, agency, or instrumentality referred to in such section, or by order of a court, or are made in settlement of litigation or under threat of imminence of litigation. * * *↩
4. Petitioner claims that the payment was on the judgment, but it is abundantly clear that C & R paid the judgment and that petitioner indemnified KCL for the payment.↩
5. This is because it is unclear whether petitioner agreed with C & R that petitioner would pay Fern the amount C & R actually had been paying or the amount that C & R was supposed to have been paying.↩
6. In light of our conclusion, we need not address the other issues raised by the parties.↩